IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL EISCHEN,

    Plaintiff,

v.

                        Civil Action 2:21-cv-5837
                        Judge Sarah D. Morrison
                        Magistrate Judge Elizabeth P. Deavers

ADAPTATION FINANCIAL
ADVISERS, INC., *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Michael Eischen's Motion to Compel Discovery from Defendant Adaptation Financial Advisors, Inc. (ECF No. 42 (the "Motion to Compel").) Plaintiff seeks an order requiring Defendant Adaptation Financial Advisors, Inc. ("Adaptation") to produce all documents and answer the interrogatories set forth in Plaintiff's Third Set of Interrogatories and Fifth Set of Requests for Production of Documents (the "Discovery Requests"). For the reasons that following, the Motion to Compel (ECF No. 42) is **GRANTED**.

On or about March 2, 2023, Plaintiff's counsel received information about Adaptation's 2021 acquisition of non-party MDK Financial Group, Inc., a company owned and operated by non-party Michael Krost. (*Id.* at PAGEID # 2051.) According to Plaintiff, under the terms of that acquisition, Adaptation retained Mr. Krost to run Adaptation's Houston office, but then Adaptation fired Krost and assumed control of the Houston office. (*Id.*) Plaintiff believes these facts are "eerily similar" to how he alleges Adaptation treated him upon acquiring Eischen Financial Group – the facts of which serve as the backdrop for this action. (*Id.*) Given these

perceived similarities, Plaintiff served the following one (1) interrogatory and seven (7) document requests upon Adaptation on March 15, 2023:

> **Interrogatory No. 25:** Identify and describe with particularity the circumstances of Michael Krost's separation or departure from Adaptation, including whether Mr. Krost was terminated for or without cause, if Adaptation terminated Mr. Krost, the process by which Adaptation decided to terminate Mr. Krost and whether Cambridge played any role in this decision, whether Adaptation signed a severance agreement with Mr. Krost, and whether Mr. Krost remains a shareholder of Adaptation.
>
> \*\*\*
>
> **Request No. 81:** All documents referenced in or relating to your answer to Interrogatory No. 25.
>
> **Request No. 82:** All documents relating to the termination, departure, or separation of Michael Krost.
>
> **Request No. 83:** All documents evidencing or relating to any audit of the Houston office performed from August 6, 2021, to present.
>
> **Request No. 84:** All recordings of any virtual meetings, town halls, or other gatherings hosted by Adaptation for clients of the Houston office from February 1, 2023, to present.
>
> **Request No. 85:** All communications to clients of the Houston office regarding Michael Krost's separation, departure, or separation from Adaptation.
>
> **Request No. 86:** All documents demonstrating whether any of Michael Krost's shares of Adaptation stock have been repurchased since January 1, 2023.
>
> **Request No. 87:** Documents demonstrating the price at which any of Michael Krost's shares of Adaptation stock were repurchased.

(*Id.* at PAGEID ## 2061-2063.)  On April 17, 2023, Adaptation responded to the Discovery Requests, objecting to each of the Discovery Requests.  (ECF No. 42-4.)  Counsel then met and conferred regarding the Discovery Requests and Adaptation's objections, but they did not reach an agreement, prompting the subject briefing.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  "'It is

2

well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).  The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence . . . .'" *Brahmamdam v. Trihealth Inc.*, No. 1:19-CV-152, 2021 WL 2555066, at *1 (S.D. Ohio June 22, 2021), *objections overruled*, No. 1:19-CV-152, 2021 WL 4260418 (S.D. Ohio Sept. 20, 2021) (citations omitted).  "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citations omitted)).  Despite being construed broadly, the concept of relevance is not unlimited.  *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-CV-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009).  Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868, at *2 (citations omitted).

Rule 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a)(1).  The Court is satisfied that this procedural prerequisite has been satisfied, having not only reviewed the parties' relevant correspondence but also having discussed the matters with the parties during a Status Conference on April 27, 2023 – at which time the Court ordered the subject briefing.

Here, the parties dispute whether the Discovery Requests at issue are relevant. On one hand, Plaintiff argues that the "[g]iven the similarities between the acquisition of Plaintiff's and Mr. Krost's businesses, including the fact that both principals stayed on to run the newly acquired offices and then within a short time thereafter were abruptly terminated without advance notice, no question exists that the information requested is relevant to Plaintiff's claims." (ECF No. 42 at PAGEID # 2054.) On the other hand, Adaptation submits that "pretext and similarly-situated employees are not relevant to this Court's determination of Good Cause," and argues that "Plaintiff's Motion cites no law and provides no legal argument for why the Krost termination is somehow relevant to this lawsuit." (ECF No. 43 at PAGEID ## 2109-2115.) Adaptation states that "this is a breach of contract claim," and argues that "[even] if this Court were to [] find that the Good Cause provision [of the subject contract] somehow is ambiguous, the Krost termination is not the type of extrinsic evidence that is relevant to this Court's Good Cause determination." (*Id.* at PAGEID # 2116.) Adaptation also emphasizes that unlike Plaintiff, "Krost was not employed by Adaptation," so "the discharge of an employee employed by a third party simply has no relevance" to this case. (*Id.* at PAGEID ## 2116-2117.) In his Reply brief, Plaintiff characterizes Adaptation's arguments as "red herrings," and reiterates that "[g]iven the similarities between the acquisition of Plaintiff's and Mr. Krost's businesses . . . no question exists that the information requested is relevant to Plaintiff's claims." (ECF No. 44 at PAGEID ## 2127-2130.)

Plaintiff's arguments are well taken. First, the Court disagrees with Adaptation's statement that this case is *only* a breach of contract claim. (ECF No. 43 at PAGEID # 2116.) Rather, as Adaptation affirmatively acknowledges, Plaintiff's Complaint also includes claims for Fraudulent Inducement (against Adaptation), Defamation (against Defendant Nieman), False

4

Light (against Defendant Nieman), and Tortious Interference with Contract (against Defendant Cambridge).  (*Id.* at PAGEID # 2111; *see also* ECF No. 8.)  And while Plaintiff's Breach of Contract claim is Plaintiff's first claim, it is not dispositive of the other claims.  Yet Adaptation makes no effort to demonstrate how the Discovery Requests may be irrelevant to Plaintiff's other claims, instead focusing its entire briefing on whether the Discovery Requests are relevant to Plaintiff's Breach of Contract claim.  (*See* ECF No. 43.)  The Court need not even analyze whether the Discovery Requests are relevant to the Breach of Contract claim, however, because the Discovery Requests are plainly relevant, for discovery purposes, at least to both the Fraudulent Inducement and Defamation claims.

For example, Plaintiff has established relevance by identifying material similarities between how he alleges Adaptation treated him and how Adaptation treated Mr. Krost, to the point where Plaintiff suggests that Adaptation's actions could be part of a larger pattern of behavior by Adaptation designed to harm individuals such as Plaintiff and Mr. Krost.  (*See generally* ECF No. 42.)  Given these compelling similarities,[1] the Court does not hesitate to conclude that Adaptation's responses to the Discovery Requests could make it more, or less, probable that Adaptation knowingly induced Plaintiff into signing the Amended Shareholder Agreement under false pretenses, or that Defendant Nieman (the President of Adaptation) knowingly made false statements about Plaintiff, as Plaintiff alleges.  *See Stewart*, 2021 WL 1192741, at *4 ("'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence . . . .'") (citing Fed. R.

---

[1] In recognizing these similarities, the Court does not pass any judgment on the veracity of Plaintiff's characterization of the underlying facts or allegations.  Nor does the Court make any determination as to the ultimate admissibility of any documents or information produced in response to the Discovery Requests.  *See* Fed. R. Civ. P. 26(b)(1) ("Information . . . need not be admissible in evidence to be discoverable.").

Evid. 401(a)).  This ends the inquiry, especially in the absence of any counterargument from Adaptation as to Plaintiff's non-Breach of Contract claims.  Accordingly, the Motion to Compel (ECF No. 42) is **GRANTED**.  Defendant Adaptation Financial Advisors, Inc. is **DIRECTED** to respond to Plaintiff's Third Set of Interrogatories and Fifth Set of Requests for Production of Documents by no later than **JUNE 1, 2023**.

Having granted the Motion to Compel, the Court must also consider Plaintiff's request for fees under Federal Rule of Civil Procedure 37(a)(5).  (*See* ECF No. 42 at PAGEID ## 2054-2055.)  While the Court agrees with Plaintiff that Adaptation should have responded to the Discovery Requests, the Court does not find it appropriate to award fees associated with the subject briefing, especially given the Court's directive for the parties to engage in the subject briefing during the April 27, 2023 Status Conference.  *Spizizen v. Nat'l City Corp.* 516 F. App'x 426, 431 (6th Cir. 2013) ("Under Rule 37, [ ] the judge retains discretion in awarding sanctions, and it does not automatically require the awarding of sanctions when granting a motion to compel if there are 'circumstances [that] make an award of expenses unjust[.]'").  The Court therefore exercises its discretion to **DENY** Plaintiff's request for fees or costs associated with the subject briefing.

**IT IS SO ORDERED.**

Date: May 18, 2023

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE